## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

JEFF CLEMENTS, et al.,

       Plaintiffs,

vs.

SMITH'S FOOD & DRUG CENTERS,
INC.,

       Defendant.

**MEMORANDUM DECISION
AND ORDER**

Case No. 2:05CV467DAK

This matter is before the court on Defendant Smith's Food & Drug Centers, Inc.'s Motion
for Summary Judgment.  The court held a hearing on the motion on May 9, 2007.  At the hearing,
Plaintiffs were represented by David J. Holdsworth, and Defendant was represented by LeGrand
R. Curtis and Douglas R. Larsen.  The court has carefully considered the pleadings, memoranda,
and other materials submitted by the parties, the arguments advanced by the parties at the hearing
on the motions, and the law and facts relevant to the motion.  Now being fully advised, the court
enters the following Memorandum Decision and Order.

### BACKGROUND

Plaintiffs assert five causes of action against Defendant: (1) breach of contract; (2) breach
of covenant of good faith and fair dealing; (3) Title VII gender discrimination; (4) Title VII
retaliation; and (5) retaliation for engaging in concerted activity.

Plaintiffs are all current or former employees of a Smith's Food & Drug Center located in

Payson, Utah.  Plaintiffs include Jeff Clements, Mary Joy Clements, Debbie Hendrickson, Ava Johnson, Sylvia Oliver, and Dennis Smith.  All of these employees were members of the United Food & Commercial Workers Union and subject to the Collective Bargaining Agreement between Smith's and the Union.  The CBA addresses Defendant's obligations to employees with respect to hours, breaks, seniority, uniforms, and employee discipline.

Smith's also has a comprehensive sexual harassment policy that prohibits all unlawful discrimination in the workplace.  The policy explains what an employee should do if subjected to sexual harassment and provides six means for informing Smith's management of incidents.  The policy also states that proven sexual harassment will result in discipline up to and including discharge.

Each of the plaintiffs has signed multiple acknowledgments that he or she received, read, and understood Smith's employee handbook.  The acknowledgment states: "This employee handbook is not intended to replace the common law doctrine of employment at will or create a contract of employment, express or implied, as between Smith's and its employees."  In addition, the acknowledgment states that "[n]one of the statements contained herein are to be considered representations or warranties."  Furthermore, the acknowledgment recognizes that if there is any conflict with the CBA, the terms of the CBA controls.

The sexual harassment alleged by all Plaintiffs except Smith allegedly started in February 2004.  Plaintiffs admit that the sexual harassment fell into one of two categories: (1) witnessing behavior by fellow employees Brent Tribett and Devi Janssen that suggested to Plaintiffs that Tribett and Janssen were having an affair, and (2) being subjected to sexually oriented or vulgar acts, jokes, or comments by Tribett, Janssen, Jennifer Johnson, Tracie Crookston, Aaron Jesson,

and other employees.  Plaintiff Dennis Smith worked in the bakery and did not interact with Tribett and Janssen.  He has a separate claim for harassment that is based on being treated poorly and criticized by a female supervisor without receiving proper instructions or guidance.

Most of the conduct Plaintiffs observed between Janssen and Tribett consisted of excessive talking, talking together in private rooms, and what appeared to be flirting.  On one occasion, however, Plaintiff Clements witnessed Janssen hug Tribett from behind.  Some Plaintiffs also recall inappropriate jokes or statements being told by certain employees, but some Plaintiffs do not.

Plaintiffs further allege that management at the store, particularly Tribett, showed favoritism to Janssen and her friends.  The favored group consisted of both men and women. The allegations claim that Tribett disregarded seniority in determining shifts and taking breaks, was rude to some employees while he joked with others, and disciplined Plaintiffs on trivial matters while looking past errors made by the favored employees.

In April 2004, Plaintiff Oliver reported to Steve Roberts, the store's manager, that "everybody knows what's going on" with Tribett and Janssen.  Oliver indicated that Tribett was wasting time talking to Janssen, Jennifer Johnson, and Aaron Jesson.  Within a week of Oliver's report, Plaintiff Johnson made a similar report to Steve Roberts.  Plaintiff Hendrickson also complained to Roberts at that time and then later reported to Terry Raicheile at the Union. Plaintiff Jeff Clements testified that he reported Tribett and Janssen's behavior to the Union in February 2004, but did not report the behavior to Smith's management until a regional human resources representative started investigating the complaints.

In May 2004, Alan Brown, a regional human resources representative for Smith's, made

two visits to the Payson store to conduct an investigation and interview employees.  A Union representative was present as well.  At the time of Brown's initial investigation, Tribett and Janssen adamantly denied any affair.  Plaintiffs made allegations about the presumed affair, not getting timely breaks while others abused their breaks, and Tribett and Janssen spending too much time together at checkstands and in the safe room.  Brown received one or two reports about some employees using inappropriate language, but he concluded there was insufficient evidence of inappropriate conduct to warrant any discipline.  Tribett and Janssen were admonished and warned that any favoritism or any substantiated allegations of sexual harassment in the future would be met with swift discipline.

Two months later, on July 29, 20004, Brown held a focus group meeting with all front-end employees of the store to determine if the infighting could be resolved.  Ten front-end employees filled out anonymous questionnaires regarding what they perceived as problems in the store and what could be done to resolve them.  None of the questionnaires mention sexual harassment, but one questionnaire stated that "moral values need to be watched."  Tribett was warned that Janssen was not allowed inside the manager's office with him alone.

Except for Plaintiff Dennis Smith, each of the other Plaintiffs filed essentially identical Charges of Discrimination with the Utah Antidiscrimination and Labor Division in November 2004.  Plaintiffs claimed that retaliatory conduct occurred after these meetings and complaints.  Plaintiffs state there were conflicts with respect to breaks, discipline, hours, shifts, and rude treatment.  The conduct is similar to their complaints of conduct before the meetings.

In February 2005, Steve Roberts observed Janssen in the manager's office alone with Tribett.  Smith's disciplined Tribett by transferring him to a store in Provo on February 13, 2005.

4

**DISCUSSION**

***I. Breach of Contract and Covenant of Good Faith and Fair Dealing***

Defendant argues that Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail because (1) Plaintiffs cannot demonstrate an implied contract of employment and (2) the claims are preempted by the CBA.

Plaintiffs rest their contract claim on the Employee Handbook, but it clearly states that it is not a contract. Plaintiffs agree that they must establish the existence of a contract. They claim that each Plaintiff and Smith's entered into a contract of employment when they agreed to work for Smith's and Smith's agreed to pay each of them for their work. Plaintiffs argue that the contract consists of several terms—only one of which was that the duration of the relationship was "at will." Plaintiffs assert that their claim for breach of contract does not involve terminations, and, thus, Plaintiffs are not trying to argue that the term of the contract was anything other than at will.

Plaintiffs are arguing that they and Smith's agreed to work in an environment in which Smith's would not allow employees to fraternize or sexually harass each other. Plaintiff agrees that this claim is based on the employee handbook and the handbook contains a disclaimer that nothing in the handbook creates a contract. Plaintiffs assert, however, that Defendants arguments as to other similar policies in the handbook effectively disclaim the disclaimer. Plaintiffs contend that the disclaimer is but one thing to look at in determining the parties' intent. Therefore, they claim that in determining whether the parties had an implied in fact term as to fraternization, the relevant evidence includes handbooks, oral disclosures, and the parties' conduct, representations, and reliance.

The law in Utah is clear: "[W]hen an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in light of the disclaimer." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 334 (Utah 1992). Mere allegations that an employer complies with provisions of the employee handbook does not demonstrate an intention to alter an employment relationship or create an implied-in-fact contract. *Johnson*, 818 P.2d at 1004. Plaintiff's premise that there is an underlying contractual relationship in every employment relationship is contrary to settled Utah law.

While intent is central to the court's inquiry as to whether a contract modifying the employment relationship exists, the intent of the parties is not in dispute in this case. There is a prominent disclaimer in the Smith's employee handbook and each of the Plaintiff's knowingly signed the disclaimer. Therefore, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims. Because the court is dismissing these claims on the basis that there is no contract, it need not reach the preemption arguments also asserted by Defendant to dismiss these claims.

## II.  Title VII Gender Discrimination

Defendant argues that there is insufficient evidence as a matter of law to establish the existence of a hostile work environment and, furthermore, it can establish each element of the *Burlington/Faragher* affirmative defense. Plaintiffs argue that Defendant sets the standard for finding a hostile work environment too high and that Defendant is not entitled to the *Burlington/Faragher* affirmative defense because its response to their complaints was not reasonable.

*A. Hostile Work Environment*

Defendant asserts that even accepting all of Plaintiff's factual assertions as true for purposes of this motion, Plaintiffs fail to state a claim of gender discrimination.  "For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1264 (10th Cir. 1998).  In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), the Supreme Court held that the work environment must be both subjectively hostile to the instant plaintiff and objectively hostile to a reasonable person in the plaintiff's position.

"Within the totality of the circumstances, there is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law."  *Lockard v. Pizza Hut Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998).  But innocuous banter, jokes, teasing, or other speech that men and women can reasonably expect in the American workplace is not enough.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  The Tenth Circuit has expressly held that "a hostile work environment, [requires] admissible evidence that a plaintiff was subjected to a steady barrage of opprobrious [sexual] comments."  *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1543 (10th Cir. 1995).

Plaintiffs claim that they had to endure sexually oriented speech and behavior from Tribett and Janssen.  But in their depositions, they failed to mention enough to demonstrate a steady barrage of comments or any kind of intimidation or ridicule.  Only three of the six

7

Plaintiffs allege they heard inappropriate remarks.  And, those three Plaintiffs make only broad

conclusory remarks.  One plaintiff heard another employee say that she was stiff from trying out

sexual positions, one employee said that another had a "nice ass," and another Plaintiff heard

another employee say "screw you" to someone else.  These incidents do not rise to the severe or

pervasive level required to state a claim.

The alleged inappropriate acts consisted of having to view other employees flirt, a hug,

laughing, some employees putting beanie babies in sexual positions, and Janssen once sitting

with her foot resting on a chair in Tribett's "crotch."  While these actions are by no means

exemplary, they are not sufficient as a matter of law to establish a claim under Title VII.

Defendant investigated the matter when it was reported, and held a focus group when there

continued to be problems at the store.  Smith's found no credible evidence of an affair when it

investigated the matter.

Furthermore, Plaintiffs claim that they were subjected to third-party harassment because

they had to witness conduct that led them to believe that Tribett and Janssen were having an

affair in violation of Defendant's fraternization policy and because Tribett favored Janssen and

her friends to the detriment of Plaintiffs.  Plaintiffs argue that such third-party harassment

developed into favoritism and disparate treatment in the manner of scheduling, allowance of

breaks, allowable activities during slow times, etc.

In *Hicks v. Gates Rubber Co.*, 8331406, 1415 (1987), the Tenth Circuit held that the

plaintiff who was not herself "the subject of harassment might have a Title VII claim if she were

forced to work in an atmosphere where such harassment was pervasive."  However, a  majority

of Circuits, including the Tenth Circuit in *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1336,

1369-1370 (10th Cir. 1997), all hold that Title VII claims do not encompass favoritism unless it is

based on impermissible classifications.  *Tenge v. Phillips Modern Ag. Co.*, 446 F.3d 903, 908 (8th

Cir. 2006).  The issue is whether members of one sex are subjected to a disadvantage to which

the other sex is not.

Plaintiffs rely on an EEOC policy in which they claim the EEOC declared that if the

sexual favoritism in the workplace were widespread, it  might establish a hostile work

environment claim.  EEOC Policy Guidance on Employer Liability*,* Notice No. 915-048

(February 15, 1990).  However, this policy was in place before relevant Tenth Circuit case law.

Plaintiff acknowledges that in *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369-70 (10th

Cir. 1997), the Tenth Circuit did not go as far as the Plaintiffs in the instant case are advocating,

but they claim that the plaintiffs in *Taken* did not allege sexual favoritism as part of the hostile

work environment.

Plaintiffs favor a case from the California Supreme Court, *Miller v. Dept. of Corrections*,

115 P.3d 76 (Cal. 2005).  In *Miller*, the court found that an employee may establish an actionable

claim of sexual harassment if widespread sexual favoritism was severe or pervasive enough to

alter his or her working conditions and create a hostile work environment.

However, *Miller* is a California state law case interpreting the California Fair

Employment Act.  Circuits, including the Tenth Circuit, have uniformly held that favoritism of a

supervisor's paramour does not constitute sexual harassment because the favoritism is not based

on sex.  *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997).  The court

finds no compelling reason to break from the uniform rulings of multiple circuits.

Plaintiffs claim that a reasonable jury in this case could find that the conduct affected

female employees disproportionately by sending a message that anything goes in the workplace, that Smith's policies were just a sham, that females that show romantic interest in their male supervisors could receive favorable treatment and that those who frown upon such relationships being displayed in the workplace could expect to receive less favorable treatment.

No matter how Plaintiffs attempt to construe the impact of alleged harassment, the individuals that were alleged victims of the harassment are members of both genders, and the individuals that allegedly benefitted from the harassment also belong to both genders.  The *Turnbull* case cited by Plaintiffs is not helpful in this analysis because the question in *Turnbull* was whether a female doctor could allege harassment when physically threatening behavior from a patient affected both males and females.  *Turnbull v. Topeka State Hospital*, 255 F.3d 1238 (10th Cir. 2001).  The *Turnbull* court concluded that because the behavior of a male patient disproportionately affected females, a female could sustain a claim against that male.  *Id.* at 1241.

In this case, however, the fact that the alleged acts perpetrated by both males and females might disproportionately affect females does not overcome the fact that both male and female employees are alleged perpetrators and both male and female Plaintiffs are seeking redress.  The claims in this case are that Tribett favored Janssen's friends, both male and female.  The group of six Plaintiffs are both male and female and the allegations of harassment come from both males and females.

Accordingly, the court also finds that Plaintiffs have failed to demonstrate that the alleged harassment occurred "because of gender."  Plaintiffs assert that they have satisfied the "because of sex" test because Tribett's and Janssen's actions were occurring because of his gender and her gender.   However, the court concludes that the facts of this case fail to demonstrate any alleged

harassment was based on gender.  The allegations fail to show an abusive environment with respect to sexual harassment or gender discrimination.

Animus or personality conflicts not related to a protected class are not evidence of improper discrimination.  *Arambru v. Boeing Co.*, 112 F.3d 1398, 1405 (10th cir. 1997). Defendant freely admits that Brent Tribett disliked Plaintiffs and the feeling was mutual, but animus and personality conflicts that existed for years are immaterial to Plaintiffs' claim of harassment.  Plaintiffs' Title VII sexual harassment claim is insufficient as a matter of law.

As for Plaintiff Dennis Smith, he alleges only that his bakery supervisor was critical of his work.  He makes no claims of witnessing any sexual conduct or comments.  He complains only about being reprimanded too harshly.  However, Title VII is not "a general civility code for the American workplace."  *Oncale*, 523 U.S. at 80.  In addition, his allegations consist only of a personality conflict.  Therefore, he has failed to state a claim for sexual harassment.

B.  *Burlington/Faragher* affirmative defense

Defendant further argues that even if Plaintiffs can establish a prima facie case of harassment, it can establish each element of its *Burlington/Faragher* affirmative defense.  The United States Supreme Court has held that an employer is not liable for the illegally harassing conduct if: "(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  The affirmative defense is available "[w]hen no tangible employment action is taken," or "even if tangible employment action occurred . . . if the tangible employment action was unrelated to any harassment or

complaint thereof." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959 (9th Cir. 2004).

In this case, Defendant asserts that it never subjected any Plaintiffs to tangible employment actions related to allegations of sexual harassment. A tangible employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus.*, 524 U.S. at 761. Plaintiff Johnson and Mary Clements still work at the Payson Smith's store and neither have had any tangible employment action taken against them. Plaintiffs Jeff Clements, Hendrickson, and Oliver no longer work at Smith's, but their terminations/resignations had nothing to do with their claims of harassment. Hendrickson and Oliver were both terminated after they failed to return from medical leave. Neither of these employees claim that their terminations were related to sexual harassment. Plaintiff Jeff Clements was terminated in August 2005, six months after Tribett had been transferred, for cash handling failures. And, Plaintiff Dennis Smith resigned his position voluntarily after securing another job with a competitor.

In any event, the facts of this case demonstrate that Defendant acted reasonably with respect to the situation presented to it. It promulgated an anti-harassment policy that was communicated to employees. The policy provides several avenues for the employees to report any problems. After the reports were made in this case, an investigation was conducted. A follow-up focus group was held when problems appeared to persist and warnings were given. Then, when Tribett was found alone with Janssen, which was contrary to a previous directive, he was transferred to another store.

Therefore, even if Plaintiffs had established a prima facie case of harassment, Defendant

is entitled to summary judgment on its affirmative defense.

### III. Retaliation Claims

Plaintiffs assert two separate claims of retaliation.  However, the parties have reached agreement that Plaintiffs' claim for retaliation based on concerted activity is preempted by the NLRA.  The NLRB, therefore, has jurisdiction in the first instance with respect to this claim, and the claim is dismissed without prejudice for lack of jurisdiction.

Plaintiffs Title VII retaliation claim is based on conduct that occurred after Plaintiffs began complaining to management about Tribett and Janssen and favoritism.  Defendant argues that Plaintiffs fail to establish an prima facie case of retaliation based on protected activity.  To establish a claim for retaliation, a plaintiff must show: (1) he/she engaged in a protected activity; (2) he/she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.  *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).

Although Defendants argue that the initial reports to management did not constitute protected activity, the court finds that the complaints are sufficient to constitute protected activity.  Under the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Sante Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).

As for adverse employment action, Plaintiffs allege that they were retaliated against with verbal harassment, being denied timely breaks, being timed on breaks, being watched more closely, being reprimanded or written up for trivial matters, receiving reduced hours, and being

treated rudely.  Plaintiffs complaints about these conditions relate back to well before they made they made their sexual harassment reports. This is the same conduct that was the subject of Plaintiffs' complaints.  Moreover, these allegations also do not rise to the level of material adversity.  As for their claim of lost hours, there is no evidence that Plaintiff's received a disproportionate share of hours.  No Plaintiffs were transferred, demoted, or had their pay cut as a result of the reports.  In addition, the Plaintiff's continued t make complaints and then filed a Charge of Discrimination with the Utah Labor Commission.  Therefore, they were not dissuaded from making further complaints.

For these same reasons, Plaintiffs have failed to establish the third element of a retaliation claim.  Under the third element, "the employee must show that the protected speech played a substantial part in the employer's decision to adversely alter the employee's conditions of employment.  Speculation or hunches amidst rumor and innuendo will not suffice." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005).   The court concludes that Plaintiffs have failed to establish a claim for retaliation because there is no evidence that there was a change in behavior as a result of the reports.  Therefore, Defendant is entitled to summary judgment.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED.  Plaintiff's case is dismissed in its entirety, each party to bear his, her, and its own fees and costs.

DATED this 21st day of June, 2007.

DALE A. KIMBALL
United States District Judge